7650

LEVAN v. ATLANTIC COAST LINE R. R. CO.

1. CARRIER AND PASSENGER.—EVIDENCE as to injuries from a carriage in cold weather in a storm is admissible in an action for selling a passenger a wrong ticket and putting him off at a station without fire and comforts as tending to show the journey was necessary and injury to plaintiff.

2. IBID.—EVIDENCE that ticket agent was stationed where he could have seen the passenger board the wrong train is admissible, but here it could hardly have had any weight with the jury as his uncontradicted evidence was that he was hard pressed and absorbed in his work.

3. CONTRADICTION.—Irrelevant or immaterial evidence is not the subject of contradiction.

4. CARRIER AND PASSENGER—TICKET.—That a passenger asks the agent of carrier for a ticket to a point by a particular route and the agent states the price and delivers the ticket is evidence of a contract of carriage over that route.

5. IBID.—ISSUES.—There being evidence here tending to show the passenger was put off at a station on a cold day with no fire in the waiting room, without money to procure accommodations, inexperienced and comparatively helpless, it was proper to send to the jury the issue whether it was the duty of the passenger to remain at the station for nearly a day for the next train or to drive in a carriage on a cold stormy day to a place of comfort.

6. IBID.—IBID.—NEGLIGENCE.—It is not a want of due diligence under all circumstances in a passenger to fail to inspect his ticket to ascertain the route there indicated, as an unsigned ticket is not the sole evidence of the contract of carriage.

7. IBID.—CONDUCTOR.—Knowledge by the ticket agent of the rights of a passenger is imputed to the conductor, and it is his duty to carry out the contract made with the agent.

Before SEASE, J., Sumter, November, 1909.    Affirmed.

Action by Malinda L. and Barton Levan against the Atlantic Coast Line R. R. Co.    From judgment for plaintiff, defendant appeals.

*Messrs. P. A. Willcox* and *Mark Reynolds,* for appellant, cite: *There was no wilfulness:* 54 S. C., 507; 75 S. C., 355; 72 S. C., 245, 343; 71 S. C., 447; 79 S. C., 211; 64 S. C., 423; 68 S. C., 98; 83 S. C., 411.    *Due care required that plaintiff should have remained at the station:* 83 S. C., 451. *Duty of passenger to inspect ticket:* 64 S. C., 423 ; 72 S. C., 345 ; 6 Cyc., 556-8.    *And to remain at station for next train:* · 75 S. C., 355 ; 83 S. C., 411; 6 Cyc., 556.

*Mr. L. D. Jennings,* contra, cites: *Jury not having included wilfulness, error in respect to claim for punitive damages harmless:* 40 S. C., 134, 92, 534; 24 S. C., 503; 32 S. C., 17.

August 6, 1910.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    The plaintiff, Barton Levan, bought of the agent of defendant a ticket and a half ticket for his wife, Malinda L. Levan, and her child from Sumter, South Carolina, to Savannah, Georgia, and return.    There was evidence from Barton Levan and other witnesses that he asked for a ticket by way of Columbia, and that, supposing tickets had been given him by that route, he put his wife and child on the train for Columbia; that between Sumter and Wedgefield, the next station, the conductor of the train told Malinda L. Levan that she had tickets for herself and child from Sumter to Savannah by way of Charleston; that the only explanation made by the passenger was that she thought she had the right tickets for that train, no claim being made by her to the conductor that the ticket agent had not given her the tickets asked for; that the plaintiff was charged no fare to Wedgefield, but was put off there and directed to

take the next train going to Charleston and thence to Savannah. The evidence of the plaintiff indicated that she was treated with courtesy by the conductor; but the plaintiff testified that it was a cold Christmas day, that there was no fire in the waiting room at Wedgefield, that there was a crowd of boisterous persons about the station, that the train from Columbia to Charleston was not due in seven or eight hours: that under these conditions she undertook to return to Sumter in a carriage sent by her husband in response to her request by telephone; that on the journey she was exposed to a very severe storm which resulted in much discomfort and sickness. The action is for the alleged negligent and wilful breach of duty by the defendant in refusing to carry the plaintiff to Savannah by way of Columbia under a contract to do so, and for the suffering and sickness alleged to have resulted from its refusal. On this allegation the verdict of the jury was for "three hundred dollars actual damages."

The twenty-two exceptions with utmost detail charge as erroneous almost every step taken by the Court in the conduct of the trial. The exceptions as to the refusal of the Circuit Judge to charge that there was no evidence to support a finding of punitive damages and as to other alleged errors on the subject of punitive damages, are put entirely out of the case by the fact that the verdict did not include any punitive damages.

Evidence as to the conditions which the plaintiff found at Wedgefield, and the injuries resulting from the carriage ride from Wedgefield to Sumter was clearly admissible as tending to show that the journey was necessary and that the plaintiff suffered injury therefrom. *Carter* v. *Southern Ry.*, 75 S. C., 355, 55 S. E., 771; *Entzminger* v. *Seaboard A. L. Ry. Co.*, 79 S. C., 151, 60 S. E., 441; *Campbell* v. *Ry.*, 83 S. C., 448.

The exception to the remark of the Court in the course of the trial as to the time when the plaintiff, Barton Levan, said

he observed on the tickets the words, "North Western Railroad Company of South Carolina," was taken under an obvious mistake. The remark contained no suggestion of the expression of opinion, but was a mere repetition of an answer of the witness for the benefit of defendant's counsel. The objections to other remarks of the Judge in passing on the admissibility of evidence have as little foundation. The Court merely gave the reasons for the acceptance or rejection of evidence, without any indication of opinion as to the merits of the case. The case therefore falls under the principle applied in *Willis* v. *Tel. Co.*, 73 S. C., 379, 53 S. E., 639, and not under that applied in *Latimer* v. *Electric Co.*, 81 S. C., 374, 62 S. E., 438.

In view of the evidence that the ticket agent had made a mistake in the sale of the tickets, no argument seems necessary to show the competency of evidence that the agent was in a position where he could see that the plaintiffs were boarding the wrong train. But even if incompetent, this testimony could hardly have had any weight with the jury, because of the uncontradicted evidence that the agent was hard pressed and absorbed in the work of selling tickets.

The contention that the Court erred in not allowing the ticket agent to testify in contradiction of Barton Levan that the words, "North Western Railroad Company" were not on the tickets sold, cannot be sustained, because it does not appear that the testimony was relevant or material.

There was direct evidence that the defendant's agent handed the plaintiffs tickets to Savannah by way of Charleston in response to a request for tickets to Savannah by way of Columbia. There was no dispute that the defendant had on sale such tickets as the plaintiffs asked for. When one asks a ticket agent for a certain ticket, and the agent responds by stating and accepting the price, that is evidence of an undertaking on the part of the

agent to furnish the ticket asked for, and of a contract on the part of the company to transport the passenger to his destination by the route specified. Therefore, the Court did not err in submitting to the jury the issue whether the defendant had contracted with the plaintiffs for tickets by way of Columbia, and whether the defendant had breached that contract to the injury of the plaintiffs.

The Court, in accordance with the rule laid down in *Carter* v. *Ry.,* 75 S. C., 355, 55 S. E., 771, gave to the jury as part of his charge the following request, except the portion italicized: "It is the duty of a passenger who has been inadvertently informed by a ticket agent that a certain train would take her to her destination, if you believe that the agent did give such misdirection, to use all reasonable means known to her, or suggested, to minimize her damages, *and if she, by waiting at the station a few hours, could have returned to Sumter and proceeded to her destination on another train, after returning to Sumter, she should have waited and taken that train and not have exposed herself. The law requires that."* The Court could not have accepted the latter part of the request without taking from the jury the question whether the circumstances were such as to make the trip from Wedgefield to Sumter necessary. *Berley* v. *Ry.,* 83 S. C., 411; *Campbell* v. *Ry.,* 83 S. C., 448.

The evidence of necessity for the trip in the carriage from Wedgefield to Sumter was weak and brings the case close to that line where the Court must reject the verdict of the jury as being without any evidence to support it. Yet a review of the testimony is not convincing that there was no evidence that the carriage trip was a necessity forced on the passenger by the defendant's breach of duty. The wait at Wedgefield would have been for almost the entire day; the passenger testified that she was without money to procure accommodations; there was no fire in the waiting room; and the record indicates that the passenger's inexperience in travel

and her comparative helplessness in any emergency must have been obvious to the officers of the defendant. Under these peculiar conditions it would not be safe for the Court to say that the duty of the passenger to minimize the damages required her to remain at Wedgefield and obtain accommodations until the arrival of a train to Savannah by way of Charleston. The question whether the suffering and sickness caused by exposure to an unexpected storm were results too remote to be embraced in damages for which the defendant was responsible is not before us. Evidence on the subject was introduced without objection, and the Court was not requested to charge the jury that in considering the effects of the journey in the cold they should eliminate the storm as a factor.

The Court also properly refused to charge the words italicized in the following request: "It is the duty of a passenger before boarding a train, to use all due diligence to ascertain if it is the right train—*the train on which his ticket entitles him to transportation,* and if the passenger fails to use the means of information at his command, he cannot complain of the resulting inconvenience or damage, even if on his refusal to pay the additional fare to the next station, or regular stopping place, he is ejected from the train." The rejected words implied that due diligence in ascertaining the right train requires the passenger to examine his ticket in every case to see if it expresses his contract of carriage. The ordinary unsigned railroad ticket is not itself the sole evidence of the contract of carriage. Such a ticket is a token or receipt given to show that the passenger has paid his fare from the place of departure mentioned therein to the place of destination mentioned therein. Hence parol evidence is admissible to prove the terms of the contract entered into, or the representation made by the agent at the time the ticket was purchased. 4 Elliott on Railroads, section 1593; *Richardson* v. *A. C. L. Ry.,* 71 S. C., 444, 51 S. E., 261.

Whether the ticket given in token of the undertaking of the railroad company properly indicates to the officers of the company that which they must do in execution of the contract is mainly the concern of the railroad company. The passenger is not in all cases rigidly charged with the obligation to see that the railroad company has properly expressed its undertaking for the guidance of the conductor and the other officials who are to act for the carrier under the ticket. It is therefore a question of fact as to whether due diligence in the effort to get on the right train requires the passenger to examine his ticket. Circumstances might arise where it would be his duty to do so. Whether the circumstances require such examination as due care on the part of the passenger is ordinarily a question for the jury. We think it safe for the Court to avoid laying down hard and fast rules as to what particular acts constitute negligence or due diligence. The evidence here does not warrant the Court in holding that no other inference could be drawn than that it would have been negligence on the part of the passenger not to examine his ticket.

In this case, however, the purchaser of the ticket indicated plainly by his testimony that he did examine his ticket. If the ticket had shown on its face that it was by a route different from that asked for by the purchaser and he had discovered the mistake when he examined it, then good faith obviously required of him the duty to report the mistake to the ticket agent and have it corrected. The difficulty of the defendant is that there was no evidence that a thorough reading of the ticket could have made any mistake therein evident to a passenger. The tickets were taken up by the conductor and in possession of the defendant and were not produced. Coupons were introduced which the agent testified were in the same form as those sold to Levan. These coupons expressed that they were good for one first-class passage from Sumter to Savannah, but the route was left blank.

The defendant's contention is that the purchaser of the ticket and the passenger were chargeable with notice that the Charleston route must be taken, because the defendant neither owned nor operated a railroad from Sumter to Savannah by way of Columbia, but did own and operate a railroad from Sumter to Savannah by way of Charleston, and the tickets did not have attached to them coupons from Columbia to Savannah on some other railroad. Had there been proof that the defendant always indicated the route over roads in this way, and that the plaintiffs knew or ought to have known that fact, observation by the passenger or purchaser of the lack of such coupons would afford strong reason to infer negligence in undertaking to use the ticket on a route requiring travel on other roads; but there was no such proof.

The last exception to be considered is as follows: "Because his Honor committed error of law in charging plaintiff's sixth request to charge, which was as follows: 'I further charge you that in proper cases the conductor must heed the statement and explanation of the passenger as to his rights, and that when he has requested and paid for a ticket to a certain place and he boards a train without fault, believing that he has obtained that which he sought, he is entitled to ride thereon, even though the agent has not furnished him with the proper evidence of his right to ride.' There was no statement or explanation of the plaintiff, Malinda L. Levan, or any one else, made to Captain Webb, the conductor, as to her rights, or what ticket she or her husband sought to buy, or that the ticket agent contracted to furnish her with any other kind of ticket, or tickets, than the one she presented."

It is a task of great difficulty to define the duties which devolve on the conductor and on the passenger, when the passenger takes a train not called for by his ticket and the conductor has no information except the statement of the passenger that he is in that situation by reason of the mis-

take of a ticket agent. The difficulty is still greater when the effort is made to impute wilfulness to the conductor as the agent of the carrier because of incorrect information imparted by the ticket agent or a mistake made by him.

The cases in other jurisdictions on this subject are in hopeless conflict. In view of the obvious embarrassment of both parties when such a situation arises, both passenger and conductor should meet it in a spirit of mutual accommodation. Oppression by the unreasonable assertion of authority on the part of the conductor, and conduct by the passenger indicating a purpose to speculate on honest mistakes of the agents of the carrier should be rebuked by the Courts with equal emphasis. In this case there is no evidence of such misconduct by either party. The rule that knowledge by the ticket agent of the rights of passengers must be imputed to the conductor is laid down in this State in *Richardson* v. *Ry.,* 71 S. C., 444, 51 S. E., 261. The only division of the Court in that case was on the issue of punitive damages, and that issue was taken out of this case by the verdict of the jury. The exceptions on this point, therefore, cannot be sustained.

As there was no evidence whatever that Barton Levan suffered any physical injury, it is not to be assumed that the jury included anything in their verdict on that account. Therefore inadvertent expressions of the Court that the jury might find a verdict for the suffering of either or both of the plaintiffs cannot affect this appeal.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.